**Decided November 5, 1984**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | |
|---|---|
| ADELA SICAT, et al., | CIVIL ACTION NO. 83-446 |
|     Plaintiffs-Counterclaim<br>        Defendants, | |
|     vs. | |
| O.K. INTERNATIONAL, INC., et al., | |
|     Defendants-Counterclaimants,<br>        Third-Party Plaintiffs, | |
|     vs. | |
| COMMONWEALTH OF THE NORTHERN<br>MARIANA ISLANDS, et al., | |
|     Third-Party Defendants. | |
| Consolidated with CHONG MIN JUNG, | CIVIL ACTION NO. 83-413 |
|     Plaintiff, | |
|     vs. | |
| OH KWANG HUN, et al., | |
|     Defendants. | |
| GWANG HEE SHIM, et al., | CIVIL ACTION NO. 83-414 |
|     Plaintiffs, | |
|     vs. | |
| OH KWANG HUN, et al., | PARTIAL SUMMARY JUDGMENT |
|     Defendants. | |

These actions were commenced by certain alien workers against the defendants (hereafter collectively referred to as "O.K.") for certain abuses of the labor laws of the Commonwealth.

O.K. filed a third-party complaint against the Commonwealth and certain government labor officials (hereafter collectively referred to as the "Government").

The Government has filed a motion for summary judgment pursuant to Rule 56(b)(c), Com.R.Civ.Pro.

## STATUS AND THRUST OF PLEADINGS AND
## MOTION FOR SUMMARY JUDGMENT

Each individual plaintiff has filed a claim against O.K. for unpaid wages resulting from the failure (so alleged) of O.K. to pay the overtime rate of one and one-half times the hourly rate ($1.75) for all hours worked by the plaintiffs over 40 hours per week. Attached to the complaints are the respective employment agreements for the plaintiffs. From these attachments it is gleaned that O.K. is in the business of running a restaurant/night club and hired the plaintiffs as waitresses. The term of employment was one year and certain provisions were made for meals, housing, etc.

O.K.'s third-party complaint against the Government is framed in two causes of action. The first cause of action alleges that O.K., pursuant to P.L. 3-66 (3 CMC § 4411, et seq),[1] submitted the various contracts for the plaintiffs to the

_____

[1] The basic procedure for an employer who wishes to hire alien workers is to submit an application and employment agreement to the Chief of Labor after certain procedural requirements are completed. 3 CMC §§ 4431 to 4433.

Government for the necessary review and approval prior to the employment of the plaintiffs. Each of the contracts at issue here were approved by the Chief of Labor. In Paragraphs VI, VII and VIII of the First Cause of Action O.K. alleges: (1) The Government exempted O.K. from the application of the minimum wage and overtime pay laws of the Commonwealth; (2) The Government breached a contractual duty when "... he (Chief of Labor) approved said contracts with such conspicuous provision in controvertion (sic) of P.L. 3-66", and (3) That the Government was negligent in approving the contracts and if O.K. is liable on the contracts, the Government should pay plaintiffs' damages.

In the second cause of action, O.K. alleges that due to the fact that the Government issued authorizations to the plaintiffs to work for another employer during the term of the contract between O.K. and the employer, it deprived O.K. of certain constitutional rights and there is liability under 42 USC 1983.

The Government's motion for summary judgment is based on several grounds. First, it is asserted there is no genuine issue of fact regarding the claimed exemption of O.K. from the minimum wage and overtime provision of the law. Second, there is no genuine issue of fact showing negligence on its part in approving the employment contracts. Third, the Government claims immunity pursuant to 7 CMC 2204 and lastly, the Government argues that there is no liability of the asserted violation of the constitutional rights and 42 USC § 1983, also raising the defense of res judicata.

4

IS THERE A GENUINE ISSUE OF FACT WHETHER THE GOVERNMENT GRANTED AN EXEMPTION TO O.K., WAIVING THE REQUIREMENTS OF COMPLYING WITH THE MINIMUM WAGE AND OVERTIME PAY PROVISIONS?

As for the minimum wage exemption, counsel for O.K. fairly well conceded that this was not an issue. The contracts clearly specified $1.75 per hour (the prevailing minimum wage at the relevant times) and there appears no basis in fact for any exemption from that requirement.

That certain exemptions are allowable is clear from reading 3 CMC 4440 . Subsection (a) of that section states:

> (a)  The Chief with the approval of the Director may authorize exemption from the following Sections or parts thereof of this Chapter:  4431,  4432,  4433(g),  4433(h), 4434(c),  4435(a),  4437(c)  and  4439(a)-(c). These  exemptions  shall  be  specifically enumerated in an exemption employer agreement and may be granted to an individual employer for a particular project described in the agreement.  Non-resident workers entering the Commonwealth  pursuant  to  an  exemption agreement shall not be permitted to transfer to another  employer  or  project  and  shall depart the Commonwealth within 20 days of completion of their work.  No family members or relatives may be permitted to accompany workers entering pursuant to an exemption.

The  Government  points  out  that  there  is  no  exemption agreement, no approval of the Director of Commerce & Labor of any such exemption agreement, no specific listing of any exemptions nor is a particular project described to which the exemption applies.

O.K. argues that since the Division of Labor approved the employment  agreement  and  the  agreement  states  on  Page 4  under

item 2 "Additional Provisions" that the "Employee will not allowed overtime but commissions", O.K. is exempted from the overtime provisions of the law. (4 CMC § 9222) In order to reach this result O.K. argues that 3 CMC 4440 allows an exemption from the provisions of § 4437(c) which translates into an exemption from the overtime law.

A close review of § 4437(c) reveals that this section deals with the minimum wage applicable to certain occupational categories and whether future increases in the minimum wage law apply to a worker's contract. Admittedly the word "overtime" appears in the last sentence of 4437(c) but this only relates to the manner of determining the amount of working hours when the employer requires a worker to be at a certain location within the Commonwealth.

It is concluded that an exemption from the provisions of 4437(c) pertains only to those provisions dealing with the minimum wage law[2] and as § 4440 reads, there is no possible exemption from the payment of overtime wages. Even if such were possible the court finds there is no genuine issue of fact as to the compliance with the other provisions of § 4440. There simply was no exemption granted by the Chief of Labor which was approved by the Director of Commerce & Labor. To seize upon a one line statement in the employment agreement cannot and does not translate into the exemption O.K. seeks. As pointed out by

---

[2]Although not at issue in this case now, the court notes that a question remains if an exemption from the provisions of 4437(c) is a waiver of the minimum wage law.

6

the Government, the application to employ non-resident workers, submitted and signed by O.K. states that the hours of employment are 7 days a week, 5 hours a day or a total of 35 hours per week. Where the rate of pay is specified in item 17 of the application, O.K. inserted $1.75 per hour and the word "none" for overtime. On page 2 of the application O.K. agrees to comply with the wages stated in item 17 and that O.K. would comply with all applicable laws which includes 4 CMC 9222, the overtime payment provision.

IS THE GOVERNMENT LIABLE TO O.K. ON A CONTRACTUAL OR NEGLIGENCE THEORY WHEN IT "APPROVED" THE PLAINTIFFS' EMPLOYMENT CONTRACTS?

The basis of O.K.'s theories rest upon the endorsement by the Chief of Labor on the various applications to which the employment contract between O.K. and the alien workers are attached. Once again, it is. the mention in the employment contract under "Additional Provisions" upon which O.K. rests its argument.[3]

The Government argues that 7 CMC 2204(a), the Government's immunity statute, bars O.K.'s action. This section is

_____

[3]In addition to the provision about overtime there are also statements that cleaning the building would not count as overtime and that no "stand-by" pay was to be paid.

7

essentially drafted from 28 USC 2680(a). The cases annotated thereto demonstrate that the exceptions to government immunity are matters of affirmative defenses. Stewart v United States, 199 F.2d 517 (1952, CA 7); Builders Corp v United States, 259 F.2d 766 (1958, CA 9). Additionally the issue of whether the government exercised due care in the execution of the statute or regulation is a factual issue and the court is not prepared on the basis of the file it has before it to rule that O.K. should be foreclosed from having its day in court on this issue.

The basis of the contract action of O.K. against the Government is 7 CMC 2251(b) since, O.K. argues, there is a statutorily required employment agreement between the Chief of Labor and O.K., citing 3 CMC 4433.

It is clear that the employment contract between the employer and worker must be approved by the Chief of Labor, 3 CMC 4434(c), but neither the provisions of law nor the employment agreements themselves establish a contract between the Chief of Labor and O.K. upon which a contractual action is envisioned or included in 7 CMC 2251(b). The gravamen of any such contract claim would have to rest on an agreement that the Government promised O.K. could employ the plaintiffs and not pay them overtime.

IS O.K.'S SECOND CAUSE OF ACTION BARRED BY RES JUDICATA?

Turning to O.K.'s second cause of action, this claim is based upon the Government's authorization of temporary work permits for O.K.'s employees who left O.K. claiming the

8

grievances indicated in this action. The same basic claim was made in O.B. Corporation & O.K. International v CNMI, et al., Civil Action No. 83-377. In order to attempt to avoid the result of this action, O.K. now claims alternate theories generally described as a breach of contract and civil rights action citing 42 USC 1983.

The breach of contract action stems from the wording in the application form which allows O.K. to hire the employees for a one year period. Civil Action 83-337 held that O.K. had no standing to sue when the Government granted temporary work permits to the employees of O.K. so they could work for other employers pending the resolution of their claims. Attempting to circumvent this ruling by the theories espoused are of no avail.

Accordingly, it is adjudged that the Third-Party Complaint against the Government be and the same is hereby dismissed, save and except those allegations in the First Cause of Action (Paragraphs I, II, III, IV, V, VIII, IX) which allege that the Government, in effect, failed to exercise due care in the execution of its statutory duties.

IT IS SO ORDERED.

Dated at Saipan, CM, this 5th day of November, 1984.

Robert A. Hefner, Chief Judge